UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X

MARK JANKOWSKI,                                           Index No.: 3:19=cv=12553

                                    Plaintiff,

                                                          Jury Trial Demanded
            -against-


WINNEBAGO INDUSTRIES, INC.,                               **COMPLAINT**


                                    Defendant.
----------------------------------------------------------X

## The Parties

1. Plaintiff, Mark Jankowski, who for all relevant periods of time has been a resident of

   the State of New Jersey, by and through his undersigned attorney states as follows

   against the Defendant.

2. Defendant, Winnebago Industries Inc. is a foreign corporation incorporated in the State of

   Iowa, with a principal business address of 605 West Crystal Lake Road. Forest City, Iowa

   50436 (the "Defendant" or "Winnebago").  Winnebago is a recreational unit manufacturer

   which manufactured the defective unit that is the subject of this action.

3. Defendant advertises its products in New Jersey.  Defendant's vehicles are driven on New

   Jersey roads.

1

## Jurisdiction

4.  This Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

5.  This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that this dispute involves predominant issues of federal law.

6.  Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202.

7.  This court has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's New Jersey state law claims because said claims are so related to the claims within the Court's original jurisdiction that those New Jersey state claims form part of the same case or controversy under Article 3 of the United States Constitution.

## FACTUAL ALLEGATIONS

8.  This case arises out of shoddy construction, manufacturing defects and design of a Recreational Vehicle (RV) purchased by the Plaintiff, and breaches of implied and express warranties.

9.  The RV was delivered defective, to which the Plaintiff requested repair from Defendant which could not repair the RV on three separate occasions, to no avail with the defect

2

unresolved.  The unresolved defect substantially impairs the use, value and safety of the vehicle.

10. During late fall of 2018, Plaintiff, shopped for and contracted for the purchase of a Winnebago RV product.  [A copy of that contract is attached as Exhibit "A".]

11. The intended use was for Plaintiff's family, including Plaintiff, his wife, and their two children aged 14 and 12.

12. Based on certain representations found on Winnebago's website, and in discussions with the Defendant's agents, regarding the product and warranties, Plaintiff contracted for the purchase of the 2019 Winnebago Forza 38W.

13. This included:  "Families love the Forza for its flexible sleeping spaces, such as the available Project 2000 front overhead bunk, and its budget-friendly price tag. The new 38W features three sliderooms, two full bathrooms, and an entertainment wall with a large HDTV on an adjustable mount. The popular 34T and 36G return with an incredible list of features that includes Primera cab seats and furniture, Corian galley countertops, and a residential refrigerator. Four fabric collections and three wood selections are sure to appeal to even the most discerning tastes. Move forward into the diesel lifestyle in your very own Winnebago Forza."

14. Winnebago represented that the unit would be a new manufactured RV in a workmanlike manner, and any omissions or malfunctions would be covered by it and its chain of service

operators, and such RV would enable Plaintiff, and other like citizens, a year-round safe and secure recreational vehicle to use anywhere.

15. In connection with Plaintiff's purchase, defendant Winnebago issued to Plaintiff express written warranties on the unit and components.  [A sample of those warranties is attached collectively as Exhibit "B".]

16. The statements and warranties described were all part of the basis of the bargain between the parties, in that the Plaintiff relied upon the truth of these affirmations in purchasing the RV. Said representations constituted an express warranty under U.C.C. § 2-313.

17. On or about October 13, 2018, during a pre-delivery test drive at Camping World of Syracuse (New York) ("CWS") as agent for defendant Winnebago, a major water issue in the RV's lower storage compartments was revealed, i.e., the lower bays were very wet after just a five minute test drive.  Service advisor at CWS advised the Plaintiff that all open issues would be corrected and the bays and lower assembly would be sealed and pressure tested prior to delivery of the vehicle.

18. Almost immediately subsequent to Plaintiff's purchase, the unit exhibited numerous defects in material and workmanship that substantially impaired the unit's use, value and safety.

19. On or about November 3, 2018, the Plaintiff took delivery of the Winnebago RV.  At that time, the inspected lower bays were found to be damp; the CW service advisor represented that the carpet was damp solely due to cleaning to ensure there was no residual foul smell from prior defective bays and water penetration, and that the bays had in fact been sealed and

pressure-tested to confirm the assembly would not experience more leaks.  Delivery of the

Winnebago RV was taken based on those representations.  At that time, there was a list of

approximately thirty other issues that were still open as of the delivery; a "We Owe" was

issued for these items and it was agreed by both parties that Camping World of Lakewood

("CWL") would be the agent to repair/replace the open items, as that location was closer to

Plaintiff's residence.  Since CW represented that the lower bays water issue had been

corrected, CW did not place that prior open issue on the open owed item at delivery.

20. Immediately upon delivery, Plaintiff drove the Winnebago RV for a weekend trip and at the

destination (which included about an hour of highway travel in the rain) it was discovered that

there was excessive water in almost every bay and all of Plaintiff's personal items that had

been placed in the bays were soaked.  The bays leaking issue apparently had not been cured

as represented.

21. Plaintiff immediately contacted Frank Davis at CWL, on or about November 12, 2018, to

inform him of the continued leak and water penetration, and so as to add the wet lower bays

to the "We Owe" list; Mr. Davis indicated that his schedule too full to address the issue until

sometime in late December (2018).

22. Immediately thereafter, on November 13, 2018, Plaintiff directly contacted Winnebago

customer service in Forest City, Iowa, and spoke to Jake Thompson who indicated the RV

could be brought to their Iowa facility where all open items, including the wet lower bays,

would be resolved.  That trip would add an approximate additional 1,400 miles to the RV, in each direction.

23. Immediately thereafter, on November 14, 2018, through consultation with and on the advice and representation of Winnebago customer service, including that Winnebago would repair all open issues, including the bay water issue, in a week span (however the week of November 19th was a short week due to the Thanksgiving holiday) and that he could drop the unit and return to pick it up after the repairs were completed, Plaintiff immediately drove the RV to Iowa.  That trip would add an approximate additional 1,400 miles to the RV, in each direction.

24.  Immediately thereafter, on November 16, 2018, Plaintiff met with Jake, at approximately 8:30 am, and surveyed the unit and all open items were identified at that time.  The lower compartments were wet when the vehicle was delivered to Iowa, and so the service technician was able to verify that issue.  Plaintiff also asked for a cost estimate for a few additional optional items.  Plaintiff left the RV at the Winnebago factory and took a bus and two flights to return to his residence in New Jersey.

25. On November 20, 2018, Plaintiff received and approved the estimate for the additional work, and was told Winnebago was progressing on all open items and the addition of the optional work might add a few days to the completion of the project.  Plaintiff approved the additional time.

6

26. On December 4, 2018, Winnebago notified the Plaintiff that all open issues were resolved, as well as additional work completed, and that the RV would be ready for pick up any time after December 10, 2018.

27. Accordingly, on December 10, 2018, Plaintiff traveled from/ to Iowa and New Jersey which included a bus, two flights and overnight hotel stay to accommodate Winnebago, and picked up the RV from Winnebago's location in Forest City, Iowa.  Due to the mileage put on the RV during the drive from New Jersey to have the open issue cured, the RV needed an alignment (at Freightliner); the chassis warranty for alignment only covered up to 5,000 miles.

28. On the return trip back to New Jersey, on December 11, 2018, after crossing into Pennsylvania (so about 900 miles of the 1,400 mile trip), an alarm went off in the coach indicating a battery problem; the house batteries and engine battery were not  charging. When the monitor was inspected, it was discovered that the hours on the generator read 85.1 hours, which could not be accurate as the generator was barely used while the RV was in Plaintiff's possession.   After numerous calls back and forth between Winnebago and Freightliner, it was determined that a problem existed with the install of the extra batteries, and Winnebago advised to return the RV back to Iowa, adding yet more unnecessary miles to the RV.

29. On the morning of December 12, 2018, Plaintiff delivered the RV back to Winnebago which advised the Plaintiff that the new battery problem was related to a bad module and a wire that

7

was cut from Winnebago's reparation to and waterproofing of the lower bays. Plaintiff again incurred costs and fees for travel to and at Winnebago.

30. On December 14, 2018, Winnebago advised the Plaintiff that the new electrical problem was corrected and the RV was ready to be picked up, for now the second trip back to New Jersey.

31. Immediately thereafter, on December 15, 2018, while on the trip back to New Jersey, the RV's tire fill stem blew out and the rear inner passenger tire went flat. During the three and a half hour wait for roadside assistance, Plaintiff inspected the lower bays which were incredulously wet with water. By the time Plaintiff landed at his home in New Jersey (after traveling through wet, wintry, salt treated roads) the RV's bays were completely soaked; water was dripping from the center chasis, the inverter in the electronics bay was covered in water, the rear bays had over an inch of standing water in them indicating the initial problem had never been fixed.

32. Immediately thereafter, on December 17, 2018, Plaintiff returned the RV to CWL, where the general manager Frank Davis communicated with Winnebago to determine how to fix this existing and open problem.

33. Immediately thereafter, on December 19, 2018, Plaintiff was notified by CWL that a Winnebago representative wanted RV to be driven to CWS – Syracuse, New York, to be repaired. Plaintiff requested that the RV be repaired at the New Jersey and not New York service station, given that he had already put approximately 4,800 extra and unnecessary miles on the vehicle driving it back and forth to Iowa, twice. Winnebago, through CWL,

represented that a Winnebago representative would travel to New Jersey on January 8, 2019

to oversee the RV's repairs and "would not leave until it was fixed".

34. On December 20, 2018, Winnebago Northeast representative Mike Muffaletto contacted

Plaintiff and requested that the firm drive the unit back to Iowa, again, for repairs.  Again, due

to the unnecessary mileage already put on the unit, and given a service location less than ten

minutes from his  home in New Jersey, Plaintiff was wary to have another 2,800 unnecessary

miles put on the RV.

35. On January 9, 2019, Plaintiff drove the RV to CWL; Plaintiff was advised Mike Muffaletto

would oversee the repairs, and that "he was staying until it is fixed and will drive it in the rain

before he leaves".

36. On January 14, 2019, based on a call from CWL, the presumably repaired RV was picked up.

Plaintiff asked if the RV had been driven in the rain (as it had not rained in New Jersey

during the period from January 9th to January 14th) and was told no.

37. On January 24, 2019, while it was raining, Plaintiff drove the RF about 50 miles on the

Garden State Parkway, only to discover at a rest stop that the RV's lower bays were wet,

almost exactly as when the RV was returned from Iowa in December.  Plaintiff immediately

drove the RV back to CWL for inspection by Frank Davis, who photographed the soaked

lower compartments and said he would contact Winnebago for resolution.

38. On January 28, 2019, Plaintiff received a call from Mike Muffaletto asking again to have the

RV driven to Iowa, so they could "try to fix it one more time" at the factory and if that didn't

work they would grant a replacement vehicle.  Given the history, including unnecessary miles and possible further depreciation, it was decided for CWL to repair.  The RV has not been repaired.

39. The RV was purchased with approximately 2,000 miles, to which Plaintiff added another 4,800 miles driving back and forth just to have the RV repaired and it is still not repaired.  The lower bays are unable to be used, and the water entering and remaining in the lower bays is causing deterioration to the electrical components as well as rusting the metal areas inside.  Plaintiff's only recourse is a replacement.

40. Plaintiff was advised in Iowa that Winnebago identified a systematic problem and has now "changed the build process on the line" so the new Forza coaches currently being released do not have this problem.

41. Plaintiff has also incurred costs and fees in traveling to Iowa from New Jersey.

42. Despite affording Defendant a reasonable opportunity to cure the defects in the unit, the unit is still defective.

43. As of today, the unit remains defective. Plaintiff has lost faith in the unit.

## FIRST CLAIM FOR RELIEF
### Violations of the Magnuson-Moss Warranty Act

44. Plaintiff incorporates by reference all preceding paragraphs.

45. The unit is a "consumer product" as defined by 15 U.S.C. § 2301(1).

46. Plaintiff is a "consumer" as defined by 15 U.S.C. §2301(3), and the unit was purchased for personal, family and household purposes.

47. Defendant is a "warrantor" as defined by 15 U.S.C.§ 2301(5).

48. Defendant is a "supplier" as defined by 15 U.S.C. § 2301(4).

49. The express written warranties are "written warranties" as defined by 15 U.S.C. §2301(6).

50. Defendant Winnebago violated the Magnuson-Moss Warranty Act by failing to conform the unit and its components to the express warranties within a reasonable number of attempts or a reasonable amount of time.  Defendant has failed to cure their failure to comply with the Act.

51. Prior to commencing this action, Plaintiff afforded defendant reasonable opportunities to cure the failures and to comply with the Act.

52. Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff is entitled to the equitable remedies of rescission and restitution and/or damages.

53. Plaintiff revokes acceptance of the unit and rescinds the contract.

54. Plaintiff is entitled to restitution of all consideration given.

55. As a proximate result of the violations of the Act, Plaintiff has sustained, and continues to sustain damages, both economic and noneconomic, in the approximate amount $75,000.00.

56. Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to attorney fees and expenses reasonably incurred in connection with this action.

## SECOND CLAIM FOR RELIEF
### Violations of the New Jersey's Consumer Fraud Act

57. Plaintiff incorporates by reference all preceding paragraphs.

58. New Jersey, which has a strong interest in protecting its citizens against unconscionable business practices, passed the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA"), which was enacted to protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services.  Under New Jersey's Consumer Fraud Act, "the act, use or employment by any person of any unconscionable commercial practice, deception or fraud, false pretense, false promise or misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate…is declared to be an unlawful practice…".

59. The CFA addresses rampant consumer complaints about fraudulent practices in the marketplace and to deter such conduct by merchants.  Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 245 (2005).  The history of the [CFA] is one of constant expansion of consumer protection.  Throughout its history, the Act has protected consumers from deception and fraud, even when committed in good faith.  Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604 (1997).  Like most remedial legislation, the CFA should be construed liberally in favor of consumers.  Cox v. Sears Roebuck & Co., 138 N.J. 2, 15 (1994).

60. Plaintiff is a "person" as defined in the CFA.

61. The brochure and web representations are "advertisements" as defined by the CFA.

62. The unit is "merchandise" as defined by the CFA.

63. The false representations regarding the unit are fraud, in the connection with the sale or advertisement or merchandise, as defined by the CFA, in that "the act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with  intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or  with the subsequent performance of such person as aforesaid, whether or not any  person has in fact been misled, deceived or damaged thereby, is declared to be  an unlawful practice; provided, however, that nothing herein contained shall  apply to the owner or publisher of newspapers, magazines, publications or  printed matter wherein such advertisement appears, or to the owner or operator  of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose  of the advertiser."

64. Under New Jersey's Consumer Fraud Act, Defendant is liable for treble damages, costs and fees, including attorney fees.

65. Plaintiff has shown unlawful conduct by the Defendant; he has an ascertainable loss, and there is a relationship between the Defendant's unlawful conduct and the Plaintiff's loss.

There is a claim under the Act.  See, New Jersey Citizen Action v. Schering-Plough Corp.,

367 N.J. Super. 8, 12-13, 842 A.2d 174 (App. Div.), certif. denied, 178 N.J. 249 (2003)

(citing Cox, supra).

66. Further, Defendant's had prior and actual knowledge about the unit's defects and

malfunctions, and knew that they would not be able to repair said defects, even with the

warranties and representations made to the general public and Plaintiff.  This includes other

lawsuits alleging the same issues PRIOR to the sale of the unit in question to the Plaintiff.

67. Pursuant to the CFA, Plaintiff is entitled to compensatory damages, treble damages, and

attorney fees.

### THIRD CLAIM FOR RELIEF
### Breach of Warranty (Both Implied and Express)

68. Plaintiff incorporates by reference all preceding paragraphs.

69. At the time of the Plaintiff's purchase, Winnebago expressly warranted and warranted by

implication that said unit was free from defects and was fit for its ordinary and particular uses,

or, if there were defects, that the same would be promptly repaired to Plaintiff's satisfaction.

70. Defendant warranted that the unit would be free from problems, including water penetration,

and able to be used year round in any location.

71. Those warranties were part of the basis of the bargain of Plaintiff's contract for the purchase

of the Winnebago RV unit.

14

72. From the date of its purchase, the Winnebago unit continues to this day to exhibit some or all of the non-conformities described herein.

73. Winnebago has been notified of the existence of said defects.  Plaintiff was promised that the defects would be remedied to his satisfaction, but Winnebago has failed and/or refused to remedy said defects, as required by the Warranty.

74. Pursuant to U.C.C. § 2-314 and 315., the Winnebago unit was not fit for the ordinary purposes for which it was to be used, and did not conform to Winnebago's promises and affirmations; the unit is not reasonably fit for the general and ordinary use for which the said unit was sold.

### FOURTH CLAIM FOR RELIEF
### Breach of Contract

75. Plaintiff incorporates by reference all preceding paragraphs.

76. Defendant breached the contract(s) it had with the Plaintiff, both written and oral, to sell and then service a fully functional RV unit, which directly caused the damages described herein.

77. Plaintiff's damages are a direct and proximate result of Defendant's actions.

78. Further, New Jersey law further implies a duty of good faith and fair dealing into every contract.  That is lacking.

## FIFTH CLAIM FOR RELIEF
### Breach of New Jersey's Lemon Law Act
\

79. Plaintiff incorporates by reference all preceding paragraphs.

80. The vehicle is a defined vehicle under New Jersey's Lemon Law Act, (N.J.S.A. 56:12-29 to

    56:12-49), which vehicle was delivered with serious warranty defects.

81. The defect substantially impairs the use, value or safety of the vehicle.

82. Defendant has had three opportunities to repair the vehicle and yet the defect remains

    unresolved.

83. The vehicle is a "lemon".

84. Defendant breached New Jersey's Lemon Law Act, and is thus liable under that Act.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.  That the contract be adjudged rescinded;

2.  For restitution;

3.  For incidental and consequential damages;

4.  For actual and statutory damages;

5.  For reasonable attorney fees and costs of suit;

6.  For costs and expenses incurred herein;

7.  For a civil penalty of three times Plaintiff's actual damages;

8.  For prejudgment interest; and

16

9.   For such other relief as this Court deem proper;


Dated: Hoboken, New Jersey

   May 14, 2019

<div style="margin-left:45%">

Richard D. DeVita, Esq. (RDD-2190)
1228 Garden Street
Hoboken, New Jersey 07030
(201) 714-7623

*R. DeVi*

*Attorneys for Plaintiff*

</div>

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by a jury.